UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**ANTONIO VINTON, JR.,**<br><br>Defendant. | 2:18-CR-20553-TGB-DRG-1<br><br>HON. TERRENCE G. BERG<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF NO. 125) AND MOTION TO APPOINT COUNSEL (ECF NO. 141)** |

Presently before the Court is Defendant Antonio Vinton, Jr.'s Motion for Compassionate Release. ECF No. 125. Defendant filed his initial motion pro se, but eventually secured counsel, who filed a supplemental brief in support. ECF No. 130. The Government responded in opposition. ECF No. 134. Defense counsel withdrew before filing a Reply, and Defendant filed a Motion to Appoint Counsel. ECF No. 141.

For the following reasons, Vinton's Motion to Appoint Counsel (ECF No. 141) and Motion for Compassionate Release (ECF No. 125) will be **DENIED**.

I. BACKGROUND

The FBI first started investigating Vinton in 2018 for suspected coercion and enticement of a minor. On January 8, 2024, Vinton pled guilty to a single count for transfer of obscene material to a minor in violation of 18 U.S.C. § 1470. While his case progressed through the

federal criminal system, Vinton was diagnosed with Esophageal Cancer in 2021. Pre-Sentence Report ("PSR"), ECF No. 118 (sealed), PageID.1035. The cancer had reached Stage IV by that time.[1] *Id.* Vinton completed 12 rounds of chemotherapy, as well as two months of radiation, and eventually went into remission in December 2022. *Id.* At the time of sentencing, on March 19, 2024, Vinton's cancer was still in remission, and he was taking preventative medicine, Nivolumab, which is marketed as Opdivo. *Id.* During the sentencing hearing, Vinton's counsel asked for a designation to a medical facility and stated that Vinton "has had some very difficult medical issues, but he's in remission at this time," and he is "still receiving chemotherapy and immunotherapy." Tr., ECF No. 129, PageID.1139. The Court explicitly addressed Vinton's medical condition when imposing a sentence of 72 months, in accordance with the plea agreement:

> He's had serious health problems here. And a person who is Mr. Vinton's age and with serious health problems is in a totally different situation than someone who is healthy and younger. . . . [His statement] suggests . . . that even at a more advanced stage when he got out he might still think that this was okay.

*Id.* at PageID.1145.

---

[1] Stage IV means the cancer has spread to other parts of the body. *See* AMERICAN CANCER SOCIETY, Treating Esophageal Cancer by Stage, available at https://www.cancer.org/cancer/types/esophagus-cancer/treating.html (last visited Dec. 12, 2025).

Vinton arrived at FCI Butner on May 13, 2024. ECF No. 135-4 (sealed), PageID.1383. Vinton was seen by BOP doctors regularly to monitor and follow up on his various medical conditions, including his history of esophageal cancer. *See Medical Records*, ECF No. 135-3 (sealed); ECF No. 125, PageID.1108. In June 2024, a doctor reported "mild thickening distal esophagus into gastric cardia," and in September 2024, the doctor reported "stable thickening" while on Nivolumab. ECF No. 135-3 (sealed), PageID.1215. On October 10, 2024, the doctor identified a "malignant neoplasm of esophagus" during a consultation for Vinton's "Stage IV Esophageal Cancer with progressive dysphagia." ECF No. 125, PageID.1108.

Vinton believed these were signs of a possible progression downward suggesting a recurrence of his Stage IV cancer. As a result, on October 18, 2024, he filed a request for compassionate release with the Warden, stating he had a terminal illness with an end-of-life trajectory. *See* ECF No. 125, PageID.1110. The Warden denied the request on October 24, 2024, stating Vinton did not meet the criteria under Program Statement 5050.50 because he did not have a terminal illness, with a life expectancy of less than 18 months, and he was independent with his self-care. ECF No. 135-2 (sealed), PageID.1208. *id.* On November 22, 2024, Vinton submitted a request for administrative remedy, stating a recent amendment to the sentencing guidelines removed the need to provide a specific life expectancy prognosis for compassionate release. ECF No.

135-1 (sealed), PageID.1203. The request was properly received on December 3, 2024,[2] and the Warden denied it on December 9, 2024 because Vinton's status had not changed since October 2024, and Vinton did not have a terminal illness with a life expectancy less than 18 months. ECF No. 135-2 (sealed), PageID.1207-06. On December 18, 2024, he asked the BOP Social Work Department for help regarding his request, which responded that "[a]t this time the program statement has not changed the way the Bureau processes CR/RIS requests" and explained that Vinton could utilize the administrative remedy process to appeal the determination. ECF No. 125, PageID.1110. But Vinton did not appeal the decision to the Regional Director. Instead, on December 31, 2024, Vinton filed the instant Motion for Compassionate Release, claiming he had a terminal illness, and it did not matter what his life expectancy was. *Id.* at PageID.1093. The Motion was mailed on January 6, 2025, and received by this Court on January 13, 2025. *Id.* at PageID.1117.

In supplemental briefing and responses, the parties submitted additional medical records shedding light on Vinton's evolving medical situation. In November 2024, the doctor noted "high grade dysplasia" but "no obvious cancer seen" and "neg[ative] for invasive malignancy." ECF No. 135-3 (sealed), PageID.1215. But on January 16, 2025, during a visit

---

[2] The November 22, 2024 request was denied because Vinton had not completed the correct form nor included enough specific detail. ECF No. 135-1 (sealed), PageID.1197.

to evaluate the "status" of Vinton's esophageal cancer "post chemotherapy and radiation therapy completed in 2022," doctors noted an "uptake in the distal esophagus SUV [standardized uptake value] max 4.25," which suggests a potential malignancy, warranting further investigation to see if the cancer has returned and whether surgery would be appropriate. *Radiologic Report ("Attachment B")*, received via email; ECF No. 135-3 (sealed), PageID.1215. On February 6, 2025, after a review of "abnormal labs," the oncologist "cleared for Stage IV Esophageal Cancer treatment." ECF No. 135-3 (sealed), PageID.1248. At the same time, Vinton was taken off of Nivolumab on February 24, 2025 because of concerns that it was causing dermatitis and pneumonitis. ECF No. 135-3 (sealed), PageID.1240. On February 24, 2025, the stated plan for treatment was to consult for cardiothoracic ("CT") surgery to discuss surgical options, such as esophagectomy, regarding Vinton's esophageal cancer. ECF No. 135-3 (sealed), PageID.1240-41.

Based on the parties' brief, as corroborating medical records have not been submitted to the Court, the BOP transported Vinton to specialists at Duke Cancer Center, Durham, North Carolina, in April 2025, where Duke proposed to surgically remove his esophagus and half his stomach to reduce the chances of recurrence. Defendant's Supplemental Motion, ECF No. 130, PageID.1160; ECF No. 134, PageID.1180.

## II. LEGAL STANDARD

"Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010). One such statute is 18 U.S.C. § 3582(c), which provides for compassionate release of a defendant based on "post-sentencing factual developments." *United States v. Hunter*, 12 F.4th 555, 569 (6th Cir. 2021).

Under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *Hunter*, 12 F.4th at 561 (quoting § 3582(c)(1)(A)(i); then *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)). Furthermore, before a defendant can seek compassionate release, he must exhaust administrative remedies or wait 30 days from the Warden's receipt of his request. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020).

The policy statement applicable to compassionate release motions, 18 U.S.C. § 1B1.13, was amended (effective November 1, 2023) to describe six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release. As

6

relevant here, the medical circumstances of a defendant may constitute extraordinary and compelling reasons under the Sentencing Commissioner's policy if:

> (1)(A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

U.S.S.G. § 1B1.13(b). The defendant bears the burden of proving that "extraordinary and compelling reasons" exist to justify release under the statute. *United States v. Marrell*, 2024 WL 3251272, at *1 (E.D. Mich. July 1, 2024)(Parker, J.) (citing to *United States v. Rodriguez*, 896 F.2d 1031, 1033 (6th Cir. 1990)).

### III. DISCUSSION

#### A. Exhaustion

Section 3582(c)(1)(A) contains an exhaustion requirement: prior to filing a motion for compassionate release, a defendant must "fully exhaust[ ] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or 30 days must lapse "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See Alam*, 960 F.3d at 832 (dismissing without prejudice motion for compassionate release filed only "10 days

7

after the warden's receipt of his request to file his motion in federal court, not the required 30 days"). While this administrative exhaustion requirement is "not jurisdictional, it is a mandatory claim-processing rule by which this Court must abide." *United States v. McAfee*, 2020 U.S. Dist. LEXIS 113677, *2-3 (S.D. Ohio June 29, 2020) (citing *Alam*, 960 F.3d at 833).

Vinton has failed to exhaust his administrative remedies. The Warden denied Vinton's latest request for administrative remedy on December 9, 2024, and told Vinton he could appeal to the Regional Director within 20 days. ECF No. 135-2 (sealed), PageID.1206-07. On December 18, 2024, Vinton asked the BOP Social Work Department for help regarding his request, and was told he could utilize the administrative remedy process to appeal the determination. ECF No. 125, PageID.1110. Appeal to the Regional Office and to the Office of General Counsel are required to fully exhaust the administrative remedy process. Declaration of S. Allison-Love, ECF No. 134-2, PageID.1191. But Vinton did not appeal the decision. *Id.* at PageID.1192. Therefore, he did not fully exhaust his administrative remedies before filing the instant Motion for Compassionate Release.

Furthermore, because the Warden responded to Vinton's requests within 30 days, both on October 24 (6 days later) and on December 9 (6 days later), Vinton cannot rely on the "30-days" rule. *See McAfee*, 2020 U.S. Dist. LEXIS 113677, *2-3 (citing 18 U.S.C. § 3582(c)(1)(A)) ("A

8

defendant may only file a motion for compassionate release after having 'fully exhausted all administrative rights to appeal' . . . or after receiving no response from the warden within thirty days, whichever is earlier."); *United States v. Vaughan*, No. 2:13-CR-36, 2025 WL 2298369, at *2 (E.D. Tenn. Aug. 8, 2025) ("At the time the motion was filed, . . . thirty days had passed with no response from the warden. Therefore, Mr. Vaughan has exhausted his administrative remedies, and this Court may consider his motion."). In any event, Vinton did not wait 30 days from the Warden's receipt of his latest request on December 3, 2024 to send the instant Motion on December 31, 2024, even though it was received by the Court on January 13, 2025. ECF No. 135-2 (sealed), PageID.1206; *see Alam*, 960 F.3d at 832 ("Alam has not exhausted his administrative appeals because he waited just 10 days after the warden's receipt of his request to file his motion in federal court, not the required 30 days.").

Therefore, Vinton has not exhausted his remedies, and the Court may deny the Motion on this basis alone. *See McAfee*, 2020 U.S. Dist. LEXIS 113677, *2-3.

### B. Terminal Illness

Furthermore, the medical records provided to the Court do not, at this time, show that Vinton's medical condition rises to the level of "extraordinary and compelling reasons" for compassionate release.

Vinton argues "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(1)(A),

because Vinton allegedly suffers from terminal cancer with an end-of-life trajectory. However, that argument fails for two reasons.

First, a review of Vinton's medical records suggests it is premature to conclude that his esophageal cancer is terminal with an end-of-life trajectory. Vinton's counsel argues that the *recurrence* of Stage IV cancer is terminal with an end-of-life trajectory, because "up to 50% of patients treated with curative esophagectomy for esophageal cancer will develop recurrence, contributing to the dismal survival associated with this disease."[3] ECF No. 130, PageID.1160. He states that life expectancy of Stage IV esophageal cancer patients, following recurrence, is 16.6 months to 33.4 months, depending on the type of treatment. *Id.*

The records do show that Vinton is being treated for esophageal cancer and has a history of such cancer.[4] However, the records do not *conclusively* indicate that Vinton's Stage IV cancer has *returned* or that he is on an end-of-life trajectory. Vinton's counsel admitted the same, stating Vinton "suffers from a *suspected* recurrence of Stage IV Esophageal Cancer" and that "recent developments show Vinton's cancer *may* be returning." ECF No. 130, PageID.1157, 1159 (emphasis added).

---

[3] Boerner T. et al., *Incidence and Management of Esophageal Cancer Recurrence to Regional Lymph Nodes After Curative Esophagectomy*, 152 INT'L J. CANCER 2109, 2109 (2023).

[4] As Vinton's counsel acknowledged, the Court already considered Vinton's cancer and remission status when it sentenced him in March 2024. *See Hunter*, 12 F.4th at 569 (noting that "extraordinary and compelling" focuses "on post-sentencing factual developments").

10

The Court understands Vinton's concerns that his cancer might be "in recurrence," especially since he has been unable to take Nivolumab, his preventive medication, since February 2025.

It is true that a "specific prognosis of life expectancy . . . is not required" under U.S.S.G. § 1B1.13(b). But what is required is evidence that Vinton suffers from a "from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)," such as metastatic solid-tumor (or Stage IV) cancer or end-stage organ disease. *See United States v. Karr*, 611 F. Supp 395, 400 (E.D. Ky. Feb. 18, 2020) (granting compassionate release based on "well-documented diagnosis of 'terminal metastatic' Stage IV cancer"); *United States v. Smallwood*, No. 5:08-CR-00038-TBR, 2020 WL 5486729, at *3 (W.D. Ky. Sept. 11, 2020) (granting compassionate release where defendant faced a recurrence of her tumor, which put her at risk of complications if contracting COVID-19, and the "side effect from her cancer treatment—the need for a wheelchair, feeding tube, no teeth, and the difficulty speaking" were "permanent disabilities").

Here, doctors who evaluated Vinton suspect some change in the status of his cancer requiring additional evaluation and treatment to determine whether the cancer has returned or what treatment might be needed to prevent recurrence, including esophagectomy. While Vinton's counsel pointed to studies showing that there is a 50% likelihood Vinton would develop recurrence after surgery, there would likewise be a 50%

11

chance he does *not* develop recurrence after surgery. A *suspected* recurrence does not satisfy defendant's burden of proving that "extraordinary and compelling reasons" exist to justify release under the statute.

Vinton's counsel cited to a case in which this Court granted compassionate release even though the parties agreed the defendant "ha[d] not been formally diagnosed with cancer, or with any other terminal illness." *United States v. English*, No. 2:19-CR-20164-TGB-EAS-1, 2022 WL 17853361, at *5 (E.D. Mich. Dec. 22, 2022). However, the Court did so based on medical records which presented a "history of BOP's gross mismanagement of [the defendant]'s serious health conditions." *Id.* Here, there is no indication the BOP is failing to respond to Vinton's health needs, and on the contrary, records show that he has been seen by BOP doctors monthly and that the BOP scheduled him for surgery in a large outside hospital to limit the risk of recurrence. To the extent Vinton requires specialized medical care, that medical care is being provided to him. *See* U.S.S.G. § 1B1.13(b)(1)(B)–(C).

Therefore, based on the records available to the Court, Vinton has failed to demonstrate that extraordinary and compelling reasons warrant compassionate release at this time.[5] If Vinton's health conditions

---

[5] The Court need not explore the § 3553 factors since there are no compelling reasons for compassionate release at this time. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) (noting that a district

12

materially decline and such conditions are supported by additional medical records that can support a finding of extraordinary and compelling reasons, Vinton may renew his motion for compassionate release after fully exhausting the administrative remedy process or if the warden does not act on his request for release within thirty days, as explained above.

### C. Appointment of Counsel

On August 21, 2025, Vinton requested that the Court appoint counsel because "[d]ue to his imprisonment, he does not have the ability nor the resources to obtain counsel." ECF No. 141. The appointment of counsel in § 3582(c) proceedings is discretionary. *United States v. Cleveland*, 2025 U.S. App. LEXIS 30608, *9 (6th Cir. 2025). This Court has already denied Vinton's first request to appoint substitute counsel on July 17, 2025 after his paid counsel withdrew, because "there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings." ECF No. 139, PageID.1390 (citing *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021)). Vinton did not present exceptional circumstances that warrant the appointment of counsel at this time. Therefore, Vinton's Motion to Appoint Counsel will be **DENIED** without prejudice to renewing the request if Vinton chooses to

---

court need not address § 3553 factors if it finds no extraordinary and compelling reasons for compassionate release).

renew his motion for compassionate release based on further medical developments.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's Motion for Compassionate Release (ECF No. 125) is **DENIED** without prejudice. This means that Defendant may re-file this motion if circumstances have changed, he exhausts his administrative remedies, and supplements his motion with updated medical records that support his request. Furthermore, Defendant's Motion to Appoint Counsel (ECF No. 141) is also **DENIED** without prejudice.

**SO ORDERED**.

Dated: January 5, 2025          /s/Terrence G. Berg
                                TERRENCE G. BERG
                                UNITED STATES DISTRICT JUDGE